UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERYL THOMPSON, individually and as
administrator of the estate of Aspen Robertson;
FRANK ROBERTSON, individually and as
administrator of the estate of Aspen Robertson; and
ESTATE OF ASPEN ROBERTSON,

                 Plaintiffs,

v.

UNITED STATES OF AMERICA; GILBANE
BUILDING COMPANY; SMITH-MILLER +
HAWKINSON ARCHITECTS LLP; NORTHLAND
ASSOCIATES, INC.; RIFENBURG
CONSTRUCTION INC.; ABIDE INTERNATIONAL
INC.; ABIDE-KASHIA JV2 LLC; ABIDE-KASHIA
JV3 LLC; and ABIDE-KASHIA JV4 LLC,

                 Defendants.

8:24-CV-1163
8:24-CV-1318
8:24-CV-1334
(GTS/DJS)

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NICHOLS LAW FIRM PLLC<br>  Counsel for Plaintiffs<br>16 Elm Street<br>Malone, NY 12953 | KEVIN F. NICHOLS, ESQ. |
| STARK & STARK, P.C.<br>  Co-Counsel for Plaintiffs<br>401 Route 73 North<br>Marlton, NJ 08053 | DEBORAH DUNN, ESQ. |
| UNITED STATES ATTORNEY'S OFFICE<br>NORTHERN DISTRICT OF NEW YORK<br>  Counsel for Defendant United States of America<br>100 South Clinton Street<br>Syracuse, NY 13261-7198 | DAVID M. KATZ, ESQ.<br>Assistant U.S. Attorney |
| ROPERS MAJESKI PC<br>  Counsel for Defendant Gilbane<br>800 Third Avenue, 29th Floor | SCOTT LAIRD, ESQ.<br>ANDREW L. MARGULIS, ESQ. |

New York, New York 10022

HARTER, SECREST & EMERY LLP      PETER H. ABDELLA, ESQ.
  Counsel for Defendant Smith-Miller + Hawkinson    CHRISTINA M. DEATS, ESQ.
1600 Bausch and Lomb Place      KATHERINE RAHMLOW, ESQ.
Rochester, NY 14604-2711

COSTELLO, COONEY & FEARON, PLLC    KELLY JOSEPH PARE, ESQ.
  Counsel for Defendant Northland      ELIZABETH A. HOFFMAN, ESQ.
211 West Jefferson Street
Syracuse, NY 13202

BURKE, SCOLAMIERO LAW FIRM     JUDITH B. AUMAND, ESQ.
  Counsel for Defendant Rifenburg      KEVIN P. BURKE, ESQ.
7 Washington Square
Albany, NY 12205

RUSSO & GOULD, LLP      TRISHE HYNES, ESQ.
  Counsel for Abide Defendants      KEVIN G. HORBATIUK, ESQ,
484 Delaware Avenue, 3rd Floor
Buffalo, NY 14202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this wrongful death action[1] filed by Sheryl Thompson,

Frank Robertson, and the Estate of Aspen Robertson (collectively, "Plaintiffs") against the

United States of America, Gilbane Building Company, Smith-Miller + Hawkinson Architects

LLP ("SMH"), Northland Associates, Inc., Rifenburg Construction Inc., Abide International Inc.,

---

[1]    The Court notes that three separate cases were opened in this Court arising from Plaintiffs' underlying claims: the main case (8:24-CV-1163) that was opened by filing a Complaint with this Court, and two separate notices of removal by two of the named Defendants in cases involving identical complaints filed in the Supreme Court of New York, St. Lawrence County (8:24-CV-1318, removed by Defendant Abide International, 8:24-CV-1134, removed by Defendant United States). The removed cases have been deemed to be member cases of this (federally filed) lead case, and the Court's findings on the motions filed in this lead case also apply to Plaintiffs' claims in those member cases.

Abide-Kashia JV2 LLC, Abide-Kashia JV3 LLC, and Abide-Kashia JV4 LLC (collectively, "Defendants"), are the following seven motions: (1) Defendant SMH's motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (2) Defendant Abide International, Abide-Kashia JV2, Abide-Kashia JV3, and Abide-Kashia JV4's (collectively "Defendant Abide" or "the Abide Defendants") motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (3) Defendant United States' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (4) Defendant Gilbane's motion for summary judgment pursuant to Fed. R. Civ. P. 56; (5) Defendant Gilbane's motion for sanctions against Plaintiffs' counsel pursuant to Fed. R. Civ. P. 11; (6) Defendant Northland's motion for summary judgment pursuant to Fed. R. Civ. P. 56; and (7) Defendant Rifenburg's motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 31, 57, 77, 97, 115, 119, 122.) For the reasons set forth below, the motions of Defendant United States, Defendant Gilbane, and Defendant Northland are granted; Defendant Gilbane's motion for sanctions is granted; the motions of Defendant SMH, Defendant Rifenburg, and the Abide Defendants are converted to motions for summary judgment; and Plaintiff is ordered to show cause as to why such converted motions should not be granted.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiffs' Complaint**

Generally, in their Complaint, Plaintiffs claim that the various Defendants all designed, installed, operated, controlled, maintained, supervised, located, repaired and/or otherwise kept the traffic control gate that caused Aspen Robertson's death, and particularly were negligent in

the following ways: (a) causing, creating and/or permitting unsafe, dangerous, and hazardous conditions and defects to exist related to the traffic control gate and/or the land where it was located; (b) failing to warn of those dangerous and hazardous conditions; (c) failing to properly inspect the traffic control gate and/or the land where it was located; (d) hiring, supervising, and/or retaining employees and/or agents for the installation, construction, operation, maintenance, repair, and upkeep of the traffic control gate; and (e) otherwise acting negligently, carelessly, recklessly, and with callous disregard. (Dkt. No. 1.)

### B. Parties' Briefing on Defendants' Motions to Dismiss

#### 1. Defendant United States' Motion to Dismiss

##### a. Defendant United States' Memorandum of Law

Generally, in its motion to dismiss, Defendant United States makes three arguments. (Dkt. No. 77, Attach. 9.) First, Defendant United States argues that it cannot be held liable for Plaintiffs' claims under the Federal Tort Claims Act ("FTCA") because they are based on the acts or omissions of an independent contractor and therefore Defendant United States is protected by the doctrine of sovereign immunity. (*Id.* at 12-16.) Specifically, Defendant United States argues that the Abide Defendants (which were contracted to perform the construction of the relevant traffic control gate at the port-of-entry) were an independent contractor rather than an employee of the federal government because Plaintiffs have not pled—and cannot plead— that Defendant United States retained control over the physical performance of Abide's work or supervised their day-to-day operations in completing the project. (*Id.*)

Second, Defendant United States argues that Plaintiffs' negligence claims under the FTCA are alternatively barred by the discretionary function exception to FTCA liability. (*Id.* at

4

16-24.)  Specifically, Defendant United States argues as follows: (a) Plaintiffs' claim that the traffic control gate constituted a dangerous condition is related to a discretionary function because Defendant United States had discretion over the placement and design of that gate (and indeed whether to have or replace the gate at all) as well as certain general specifications and the choice to leave the lane of travel affected by the gate open during the process of construction; (b) Plaintiffs' failure-to-warn claim is also covered under the discretionary function exception; (c) Plaintiffs' failure-to-inspect claim also involves discretionary conduct over Defendant United States' choice to delegate broad authority over the work to the Abide Defendants; (d) Defendant United States' decision regarding the hiring and retention of the Abide Defendants as a contractor and its delegation of authority thereto was also a discretionary action.  (*Id.*)

Third, Defendant United States argues that the other Defendants' cross-claims must also be dismissed because they are barred to the same extent that Plaintiffs' claims are barred as a result of the exceptions to FTCA liability.  (*Id.* at 24-25.)

### b.  Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant United States' motion, Plaintiffs make four arguments.  (Dkt. No. 105.)  First, Plaintiffs argue that Defendant United States' motion should be denied because they have alleged facts plausibly suggesting that Defendant United States had sufficient control and supervision over the Abide Defendants.  (*Id.* at 9-11.)

Second, Plaintiffs argue that the discretionary function exception does not apply because Defendant United States was required to follow specific guidelines and regulations related to the design and installation of the traffic control gate, and therefore did not exercise discretion.  (*Id.* at 11-15.)

5

Third, Plaintiffs argue that their various specific claims are not barred because the facts and evidence show that (a) Defendant United States' actions were mandated by guidelines and policies rather than a product of discretion, and (b) Defendant United States exercised oversight over the work of the Abide Defendants which undermines the argument that the Abide Defendants were merely an independent contractor. (*Id.* at 15-19.)

Fourth, Plaintiffs argue that dismissal is premature because discovery has not yet occurred as to key factual issues related to Defendant United States' arguments. (*Id.* at 19-22.)

### c.    Defendant United States' Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, Defendant United States makes three arguments. (Dkt. No. 112.) First, Defendant United States argues that it did not strictly control the work performed by the Abide Defendants (which issue, it asserts, constitutes a matter of law) because the provisions of the contract between it and the Abide Defendants do not establish such control. (*Id.* at 7-9.)

Second, Defendant United States argues that the discretionary function exception applies to bar Plaintiffs' claims because key decisions made regarding the traffic control gate were discretionary. (*Id.* at 9-13.)

Third, Defendant United States argues that Plaintiffs' request for discovery should be denied because Plaintiffs have shown no basis for a need for such additional evidence related to deciding the presented jurisdictional questions. (*Id.* at 13-15.)

### 2.    Defendant SMH's Motion to Dismiss

#### a.    Defendant SMH's Memorandum of Law

Generally, in its motion to dismiss, Defendant SMH makes three arguments.  (Dkt. No. 31, Attach. 5.)  First, Defendant SMH argues that Plaintiffs' claims against it must be dismissed because Plaintiffs failed to serve it with a notice of claim prior to commencing suit as required by N.Y. C.P.L.R. § 214-d, given that the work Defendant SMH actually performed on the port of entry was completed more than ten years before the alleged wrongful death occurred.  (*Id.* at 7-10.)

Second, Defendant SMH argues that Plaintiffs' claim against it should also be dismissed because it failed to meet the pleading standards of N.Y. C.P.L.R. § 3211(h) in that they have not included any allegations specific to Defendant SMH regarding what conduct it engaged in that was negligent and/or caused the alleged wrongful death.  (*Id.* at 10-12.)

Third, Defendant SMH similarly argue that Plaintiffs' claim against it also fails to meet the plausibility standard of Fed. R. Civ. P. 8 because the allegations simply group all the Defendants together and do not specify what conduct Defendant SMH is actually alleged to have participated in such that the Complaint does not provide adequate notice of the basis for the claim asserted against Defendant SMH.  (*Id.* at 12-14.)

### b.    Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant SMH's motion, Plaintiffs make three arguments. (Dkt. No. 84.)  First, Plaintiffs argue that Defendant SMH has misapplied N.Y. C.P.L.R. § 214-d because Plaintiffs' claim does not rely upon the completion of a project, but rather asserts an ongoing duty to ensure the safety of its design of the port of entry, and therefore that statute is not triggered here.  (*Id.* at 4-5.)  In any event, Plaintiffs also argue that, if the Court finds that

N.Y. C.P.L.R. § 214-d is applicable under the circumstances, they should be permitted to file a timely second action. (*Id.* at 5-6.)

Second, Plaintiffs argue that they have alleged a substantial basis under N.Y. C.P.L.R. § 3211(h) because they have pleaded, among other facts, that Defendant SMH breached a continuing duty to ensure the safety of its design and warn of latent defects, and because at this stage there is still more to be revealed through discovery than is currently only in the hands of the Defendants. (*Id.* at 7-9.)

Third, Plaintiffs argue that Defendant SMH's motion is premature because discovery has not yet been completed and there are still many unknowns regarding Defendant SMH's conduct and adherence to its professional duties. (*Id.* at 9.)

### c.    Defendant SMH's Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, Defendant SMH makes two arguments. (Dkt. No. 92.)  First, Defendant SMH argues that Plaintiffs' claims must be dismissed against it for failure to comply with the notice requirements of N.Y. C.P.L.R. § 214-d because Plaintiffs do not dispute that they failed to comply with that notice requirement and their argument that there exists some continuing duty that alters the accrual date of that requirement is not supported by any legal authority. (*Id.* at 4-5.)

Second, Defendant SMH argues that Plaintiffs cannot rely on the absence of unknown future discovery as a basis for arguing that their claim should not be dismissed because Plaintiffs themselves have acknowledged in their papers that the traffic control gate at issue in this case was not part of the project worked on by Defendant SMH, and they have offered nothing but

generalized allegations that apply to all Defendants without specifying what Defendant SMH specifically did related to Plaintiffs' claims. (*Id.* at 5-7.)

### 3.     The Abide Defendants' Motion to Dismiss

#### a.     The Abide Defendants' Memorandum of Law

Generally, in their motion to dismiss, the Abide Defendants make five arguments. (Dkt. No. 57, Attach. 2.) First, the Abide Defendants argue that Plaintiffs' claims should be dismissed because they raise non-justiciable political questions in that (a) resolution of them would raise issues that are constitutionally committed to the political branches, and (b) no judicially manageable standards exist for resolution of this question. (*Id.* at 3-6.)

Second, the Abide Defendants argue that the Plaintiffs' claims against them (and cross-claims by the various other Defendants) should be dismissed on the basis of derivative immunity due to the fact that the Abide Defendants are government contractors and therefore immune from suit for the performance of discretionary government functions that, like here, are within the scope of their federal contract. (*Id.* at 6-8.)

Third, the Abide Defendants argue that the government-contractor defense also bars Plaintiffs' state-law claims against the Abide Defendants because they constructed the traffic control gate in accordance with design specifications approved by the Government and informed the Government of dangers associated with the gate known to them but not to the Government. (*Id.* at 8-9.)

Fourth, the Abide Defendants argue that Plaintiffs have failed to state a claim because they do not allege any facts to provide specific notice of the claims against them, but instead

merely group all the Defendants together without distinction in conduct or responsibility.[2]  (*Id.* at 9-11.)

Fifth, the Abide Defendants argue that, if the Court finds that all viable claims against them should be dismissed, then the other Defendants' cross-claims must also be dismissed.  (*Id.* at 11.)

### b.    Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to the Abide Defendants' motion, Plaintiffs make four arguments.  (Dkt. No. 83.)  First, Plaintiffs argue that the claims here do not implicate the political question doctrine because the claim is merely a straightforward one of negligence that does not require any encroachment into political matters.  (*Id.* at 7-11.)

Second, Plaintiffs argue that the Abide Defendants' assertions of derivative sovereign immunity do not apply here because negligence or failure to adhere to professional standards is not covered under that doctrine.  (*Id.* at 11-13.)

Third, Plaintiffs argue that the Abide Defendants have failed to demonstrate the requirements for applying the government-contractor defense, because (a) the mere existence of a contract does not show the level of government approval required, (b) Plaintiffs have alleged that the Abide Defendants failed to ensure that the traffic control gate met safety and operational standards, (c) there is no evidence that the Abide Defendants warned the Government about

---

[2]      The Court notes that it is not entirely clear what, if any, role the three Abide-Kashia Defendants played in this case.  Plaintiffs list them as subsidiaries of Defendant Abide International in the Complaint (Dkt. No. 1, at ¶¶ 17-19), but the evidence presented with the various motions appears to suggest that the relevant contract for the 2022 Project in which the traffic control gate was built was between Defendant United States and Defendant Abide International.

safety hazards related to the gate's design, placement, installation, maintenance, and/or operation, and (d) discovery is needed to determine whether the Abide Defendants are able to establish this defense and therefore a decision on that issue would be premature.  (*Id.* at 14-15.)

Fourth, Plaintiffs argue that the allegations in the Complaint provide adequate notice to the Abide Defendants of the basis of the claims against them.  (*Id.* at 15-17.)

### c.    The Abide Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, the Abide Defendants make four arguments. (Dkt. No. 91.)  First, the Abide Defendants argue that Plaintiffs claims should be dismissed because they raise political questions given that deciding those claims would require the Court to "second-guess decisions made by the U.S. Government in regulating the movement of persons and goods across the border and strengthening security at the point of entry," particularly as to why the lane in question remained open despite the fact the traffic control gate was still under construction and why the gate was placed and/or designed in a certain way.  (*Id.* at 3-7.)

Second, the Abide Defendants argue that Plaintiffs' claims should be dismissed on the grounds of derivative sovereign immunity because, even if Plaintiff has alleged a deviation from professional standards, immunity would nevertheless bar such claim because the relevant work was performed pursuant to a government contract and the Abide Defendants did not exceed their authority under that contract.  (*Id.* at 8-9.)

Third, the Abide Defendants argue that the government-contractor defense also bars this action against them because (a) the Government approved reasonably precise specifications for the traffic control gate as evidenced by the contract, (b) the gate conformed to those

11

specifications given that all work had to be approved by the Government, and (c) there were no dangers known to the Abide Defendants that were not known to the Government.  (*Id.* at 9-10.)

Fourth, the Abide Defendants argue that Plaintiffs' Complaint fails to state a claim because of Plaintiffs' use of group pleading that fails to plausibly suggest what specific actions or fault is attributable to any specific Defendant.  (*Id.* at 10.)

### 4. Defendant Rifenburg's Motion to Dismiss

#### a. Defendant Rifenburg's Memorandum of Law

Generally, in its motion to dismiss, Defendant Rifenburg argues that Plaintiffs are unable to establish a claim of negligence against it because (a) Plaintiffs have not made any specific allegations regarding what Defendant Rifenburg actually did to contribute to Mr. Robertson's death, but instead lumped all the Defendants together in their generic allegations, (b) Plaintiffs' only allegation of negligence relates to the traffic control gate, the design, installation, or maintenance of which Defendant Rifenburg had no involvement, and (c) based on the evidence provided as part of all the other motions filed in this case, there is no basis to believe that discovery would reveal that Defendant Rifenburg was involved in the conduct underlying Plaintiffs' claims given that its only involvement with the site was back in 2007 unrelated to the gate at issue here.  (Dkt. No. 122, Attach. 3.)

#### b. Plaintiffs' Opposition Memorandum of Law

Generally, in opposition, Plaintiffs make three arguments.  (Dkt. No. 124.)  First, Plaintiffs argue that there is nothing vague or conclusory about their allegations against Defendant Rifenburg because they alleged that all of the Defendants were negligent related to the traffic control gate and the land upon which it was situated, and Defendant Rifenburg, as part of

12

the 2007 project, engaged in site work "in the precise area where the traffic control gate was later installed" and which "are critical elements of the roadway environment that directly impact the safety and placement of the 2022 gate system." (*Id.* at 7-10.) Plaintiffs further argue that their claims "encompass the broader roadway environment, including curvature, elevation, slope, sight lines, signage, lighting, and other site features." (*Id.* at 9.)

Second, Plaintiffs argue that dismissal would be premature because Plaintiffs have not yet had a meaningful opportunity to conduct discovery into Defendant Rifenburg's role in the construction of the roadway and land surrounding the traffic control gate. (*Id.* at 10-11.)

Third, Plaintiffs argue that, in the alternative, the Court should dismiss the claims against Defendant Rifenburg without prejudice subject to a waiver of any applicable statute of limitations defense that would prevent renewal of those claims in the future. (*Id.* at 11.)

### c. Defendant Rifenburg's Reply Memorandum of Law

Generally, in reply, Defendant Rifenburg argues that Plaintiffs cannot establish as cause of action for negligence against it for the following reasons: (a) Plaintiffs have conceded that Defendant Rifenburg had no involvement in the design, construction, installation, operation, maintenance, and supervision related to the traffic control gate; (b) Plaintiffs' contentions in response to the motions of Defendant Gilbane and others show that Plaintiffs have also conceded that the 2022 construction project of which the traffic control gate was a part included a reconfiguration of the roadways and installation of additional barrier, which undermines Plaintiffs' assertion that Defendant Rifenburg's sitework in 2007 might have contributed somehow to Mr. Robertson's death; and (c) there is no need for discovery here before this motion may be properly decided because Plaintiffs have received sufficient discovery related to

13

the 2022 project in which the traffic control gate was constructed to know what that construction entailed and that Defendant Rifenburg was not involved.  (Dkt. No. 125, at 4-6.)

### C.     Parties' Briefing on Defendants' Motions for Summary Judgment

#### 1.     Defendant Gilbane's Motion for Summary Judgment

##### a.     Defendant Gilbane's Memorandum of Law

Generally, in its motion for summary judgment, Defendant Gilbane makes two arguments.  (Dkt. No. 97, Attach. 1.)  First, Defendant Gilbane argues that it is entitled to summary judgment on the claims against it because (a) Plaintiffs do not plead any specific non-conclusory allegations regarding any involvement of Defendant Gilbane with the design or installation of the relevant traffic control gate, (b) evidence shows that Plaintiffs cannot raise any genuine dispute of material fact regarding the lack of involvement of Defendant Gilbane with the design or installation of that gate, and (c) even if Plaintiffs could produce any such evidence, the claims still must be dismissed on the basis that they present a political question, or that Defendant Gilbane (as a government contractor) is protected by derivate sovereign immunity and the government-contractor defense.  (*Id.* at 13-15.)

Second, Defendant Gilbane argues that it is entitled to sanctions and/or costs because, in bringing these claims against Defendant Gilbane, Plaintiffs and their counsel failed to conduct a proper inquiry into the viability of those claims and continued to pursue claims that they now know have no factual basis.  (*Id.* at 15-16.)

##### b.     Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant Gilbane's motion, Plaintiffs make three arguments. (Dkt. No. 114.)  First, Plaintiffs argue that summary judgment is both premature and

inappropriate because Plaintiffs have not yet been given a fair opportunity to engage in discovery related to the actual and specific extent of the work performed by Defendant Gilbane related to conditions that may have contributed to the accident, which encompasses more than merely the traffic control gate. (*Id.* at 10-12.)  Plaintiffs also argue that, as an alternative to summary judgment, the Court could (with consent of Plaintiffs) dismiss Defendant Gilbane without prejudice, but with a waiver of Defendant Gilbane's statute of limitations defense. (*Id.* at 12-15.)

Second, Plaintiffs argue that Defendant Gilbane's request for sanctions should be denied because (a) the inclusion of Defendant Gilbane in this action was the product of a reasonable inquiry, and (b) Plaintiffs are not being unreasonable in declining to agree to dismiss Defendant Gilbane with prejudice or without a waiver to the statute of limitations defense under the circumstances. (*Id.* at 15-18.)

Third, Plaintiffs argue that Defendant Gilbane's request for sanctions must also be dismissed because it was not filed as a separate motion as required by Fed. R. Civ. P. 11. (*Id.* at 18-19.)

### c.     Defendant Gilbane's Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, Defendant Gilbane makes two arguments. (Dkt. No. 116.)  First, Defendant Gilbane argues that its motion for summary judgment should be granted for the following reasons: (a) all of its asserted undisputed material facts related to that motion should be deemed to have been admitted based on Plaintiffs' failure to respond thereto; (b) Plaintiffs have submitted no evidence to refute Defendant Gilbane's evidence that it had no involvement related to the relevant traffic control gate and has essentially conceded that the responsibility for such gate rests with Defendant United States and the Abide Defendants; (c)

15

Plaintiffs have not complied with Fed. R. Civ. P. 56(d) related to the argument that the motion is premature because they have not submitted an affidavit explaining why they cannot present sufficient facts to oppose the motion without further discovery or what discovery they reasonably expect to collect that would substantiate their claims against Defendant Gilbane; and (d) Plaintiffs have not provided any expert witness evidence to substantiate their assertion that work Defendant Gilbane did related to the roadway itself in the remote past may have contributed to the accident. (*Id.* at 6-12.)

Second, Defendant Gilbane argues that it is entitled to sanctions and/or costs because (a) a simple internet search of articles from fourteen years ago does not suggest a reasonable inquiry related to the propriety of Defendant Gilbane's presence in this action, (b) the fact that Plaintiffs offered a stipulation of discontinuance does not remedy Plaintiffs' conduct, and (c) Plaintiffs' action of bringing claims against Defendant Gilbane and opposing the motion for summary judgment despite being made clearly aware that it had nothing to do with the relevant traffic control gate is unwarranted. (*Id.* at 12-16.)

### 2.     Defendant Northland's Motion for Summary Judgment

#### a.     Defendant Northland's Memorandum of Law

Generally, in its motion, Defendant Northland makes three arguments. (Dkt. No. 119, Attach. 12.) First, Defendant Northland argues that it was not involved in the 2022 project in which the relevant traffic control gate was installed and Plaintiffs have therefore not shown any basis for liability against Defendant Northland, especially because they have not alleged any facts plausibly suggesting that Defendant Northland specifically contributed to the asserted

negligence related to the gate that led to Mr. Robertson's death, and no evidence substantiates any such involvement. (*Id.* at 7-10.)

Second, Defendant Northland argues that it is also entitled to summary judgment because the work it conducted related to the construction project in 2007 was inspected and approved by Defendant United States as the contracting entity and it never returned to perform any additional work after that time. (*Id.* at 10-12.)

Third, Defendant Northland argues that, if Plaintiffs' claims against it are dismissed, the other defendants' cross-claims for indemnification and contribution should also be dismissed. (*Id.* at 12-13.)

### b.    Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant Northland's motion, Plaintiffs make two arguments. (Dkt. No. 120.) First, Plaintiffs argue that summary judgment is premature because they have not had a fair opportunity to conduct discovery at this stage, including not yet being able to depose fact witnesses relied upon by Defendant Northland in support of its motion and not being able to yet fully develop theories of liability outside of the traffic control gate itself. (*Id.* at 11-13.)

Second, Plaintiffs argue that, as an alternative to summary judgment, the Court could dismiss Defendant Northland without prejudice and subject to a waiver of their statute-of-limitations defense. (*Id.* at 14-15.)

### c.    Defendant Northland's Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, Defendant Northland makes two arguments. (Dkt. No. 121.) First, Defendant Northland argues that Plaintiffs' submitted counter-statement of

17

facts supports its entitlement to summary judgment because they admit that Mr. Robertson's death occurred in connection with a traffic control gate that was installed in a separate construction project in 2022 that was still under construction at the time of the accident, and that, by contrast, Defendant Northland's involvement was limited to a separate project that lasted from 2007 to 2011 (*Id.* at 5-7.)

Second, Defendant Northland argues that Plaintiffs' assertion that they require more discovery before the Court may properly consider granting summary judgment is (a) based on unsupported conclusions and speculation that taking depositions or other discovery will reveal flaws in the evidence provided by Defendants or other evidence that Defendant Northland was somehow involved in the conduct underlying Plaintiffs' claims, and (b) unsupported by an affidavit as required by Fed. R. Civ. P. 56(d). (*Id.* at 7-10.)

### D.    Parties' Briefing on Defendant Gilbane's Motion for Sanctions[3]

#### 1.    Defendant Gilbane's Memorandum of Law

Generally, in its motion for sanctions, Defendant Gilbane argues that Plaintiffs and Plaintiffs' counsel should be subject to sanctions related to their continued pursuit of claims against it because they (a) failed to conduct the necessary inquiry to ensure that those claims were viable and supported by an evidentiary basis, and (b) have declined to dismiss those claims without prejudice (and not subject to unnecessary restrictions) regardless of the fact that it is now clear they have no merit. (Dkt. No. 115, Attach. 1, at 13-14.) Defendant Gilbane argues that the

---

[3]    Defendant Gilbane initially made a request for sanctions within its motion for summary judgment, a practice which is procedurally improper pursuant to Fed. R. Civ. P. 11(c)(2). However, it subsequently filed a separate motion for sanctions to remedy that error.

Court should impose sanctions and order reimbursement of Defendant Gilbane's reasonable attorney's fees and costs incurred as a result of Plaintiffs' sanctionable conduct. (*Id.* at 14.)

### 2.     Plaintiffs' Opposition Memorandum of Law

Generally, in opposition, Plaintiffs argue that Defendant Gilbane's motion should be denied because their claims against it are based on a reasonable inquiry in that public records and other information document that Defendant Gilbane was involved in construction work on or near the incident site which could reasonably make them a potentially responsible party. (Dkt. No. 117, at 7.) Beyond that, Plaintiffs argue, when they received limited discovery from Defendant Gilbane that suggests its involvement in the underlying claims might be limited, Plaintiffs offered to stipulate to a dismissal without prejudice conditioned on a waiver of the statute of limitations defense, attempting to balance Defendant Gilbane's interests with their own interest in protecting their right to re-assert such claims should additional evidence arise in the course of discovery, and it was Defendant Gilbane who refused to engage in good faith with those efforts. (*Id.* at 8-10.)

### 3.     Defendant Gilbane's Reply Memorandum of Law

Generally, in reply, Defendant Gilbane argues that Plaintiffs' supposedly reasonable and good-faith inquiry consisting of a Google search revealing a few publicly available articles indicating Defendant Gilbane had been involved in construction at the site years prior to the building of the relevant traffic control gate is not an assurance that the inclusion of Defendant Gilbane has evidentiary support, and they have since been provided with evidence that proves Defendant Gilbane had nothing to do with the design, construction, or maintenance of the traffic control gate. (Dkt. No. 118, at 7-13.) Defendant Gilbane also asserts that it requested a

stipulation of discontinuance without prejudice, but Plaintiffs refused to agree unless Defendant Gilbane agreed to waive its statute of limitations defense.  (*Id.* at 9-10.)

E.     **Statements of Undisputed Material Facts on the Motions for Summary Judgment**

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 56.1(b).  This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."  *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).  Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'"  *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).  "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  N.D.N.Y. L.R. 56.1(b).

The Court notes that Plaintiffs have failed to comply with Local Rule 56.1 by failing to provide proper responses to the Statements of Material Facts submitted by either Defendant Gilbane or Defendant Northland.  Plaintiffs notably do not appear to have submitted any

response to Defendant Gilbane's Statement of Facts. (*See, generally* Dkt. No. 114.) Plaintiff did submit a "counterstatement of material facts" in opposition to Defendant Northland's motion, but this counterstatement does not admit or deny the facts asserted by Defendant Northland in its Statement of Material Facts in corresponding separately numbered paragraphs as required by Local Rule 56.1, and indeed is not in any way responsive to the facts Defendant Northland has asserted. (Dkt. No. 120, at 1-4.)[4] The Court notes that, notwithstanding Plaintiffs' failure to appropriately respond to either Defendant's Statement of Material Facts, it has carefully reviewed the record and has found no admissible evidence in the record to provide a basis for disputing those facts.

The following facts have been asserted and supported by record citations by each moving party.

## 1.    Defendant Gilbane's Statement of Undisputed Material Facts

1.    Plaintiffs' decedent, Aspen Robertson, died in a single-car automobile accident in the early morning hours of September 24, 2022.

---

[4]    *See Binghamton-Johnson City Joint Sewage Bd. v. Am. Alternative Ins. Corp.*, 12-CV-0553, 2015 WL 2249346, at *11 n.1 (N.D.N.Y. May 13, 2015) ("Neither the Federal Rules of Civil Procedure nor the Local Rules of Practice [for the N.D.N.Y.] permit such a counterstatement in response to a motion for summary judgment. . . . This, of course, makes sense, given that what is needed for a non-movant to defeat a motion is a genuine dispute of fact; and the only point of asserting undisputed facts would be to prevail on a cross-motion for summary judgment."); *Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 n.1 (N.D.N.Y. Mar. 27, 2015) ("The Court notes that, under Fed. R. Civ. P. 56 and N.D.N.Y. Local Rule 7.1, there is no procedure by which a non-movant may assert a 'counter statement of [undisputed] material facts' in response to a motion for summary judgment: the vehicle for such undisputed material facts would be a cross-motion for summary judgment (i.e., one seeking a judgment due to a lack of a genuine dispute of material fact)."); *cf. CitiBank N.A. v. City of Burlington*, 11-CV-0214, 2013 WL 6528515 at *5 (D. Vt. Dec. 10, 2013) (holding non-movant's "additional statement of 'further undisputed material facts'" was unauthorized by both federal and local rules).

2.      Mr. Robertson was driving a Ford sedan northbound on International Bridge Road toward the Seaway International Bridge.

3.      The accident location, more broadly, is located at 30M Seaway International Bridge, Rooseveltown, New York 13683, which is also referred to as the Massena Port of Entry.

4.      Mr. Robertson's sedan veered off the roadway before it struck the end of a steel security gate that was secured in the "open" position.  The gate entered the passenger compartment of the vehicle.

5.      At the time of Mr. Robertson's motor vehicle accident, an active construction project was ongoing in order to enhance security at the Seaway International Bridge and Massena Port of Entry from in and about July 2022 through November 2022 (the "2022 Project").

6.      The United States General Services Administration ("GSA") owns the Massena Port of Entry and manages all contracts supporting that facility.[5]

7.      The United States Customs and Border Protection ("CBP") is a tenant of the Massena Port of Entry.

8.      GSA has discretion in picking various contractual structures that provide differing levels of supervision and control over contractors as to the performance of the contracted work based on a single contractor being responsible for both the design and construction over the project, and, after considering different options, GSA chose to use the design-build acquisition strategy for the 2022 Project.

---

[5]      The Court has altered the asserted fact to more closely and accurately track the content of the cited evidence.  (Dkt. No. 100, at ¶ 6; Dkt. No. 97, Attach. 9, at ¶ 9.)

9.    As part of the 2022 Project, GSA contracted with Defendant Abide International, a contractor, to perform work on the traffic control gate involved in Mr. Robertson's automobile accident.

10.    A history of the contract between GSA and Defendant Abide shows that the plans in question were approved in August 2021, solicitations were issued in August 2021, Defendant Abide was awarded the project in January 2022, and final payment was issued in January 2023.

11.    Pursuant to the agreement between GSA and Defendant Abide, which was termed a "design-build" contract, Defendant Abide was responsible for designing and installing the gate, either by itself or through the retention of a sub-contractor.

12.    In or about 2022, Abide exercised control over the means and methods of its work on the project during the time of construction along with its subcontractor, Atlas Fence.

13.    Defendant Abide knew the lane of travel at issue here would be open during the construction project. CBP had made a decision, based on operational concerns, that the lane of travel would remain open because closing that lane—which is the only lane designed for use going northbound—would impede personal travel, commerce, and the openness of borders between the United States and Canada. Defendant Abide had responsibility for conducting its construction in such a way that the lane of travel would remain open during construction. If Defendant Abide believed the lane of travel at issue here would need to be closed, it would have needed to request the closure; but it did not request any such closure at any time relevant to this action.

14. Defendant Gilbane had completed work on a separate construction project at the Massena Port of Entry in or about 2009, approximately 13 years before Mr. Robertson's motor vehicle accident.[6]

15. In connection with Defendant Gilbane's unrelated work, it entered into a Construction Management Services Contract with GSA in or about May 2005. Its scope of work on that project did not entail it employing any personnel to perform construction work, but rather the construction was subcontracted out by GSA and Defendant Northland (who was the construction contractor for that project) to other entities. Defendant Gilbane's role in that project included reviewing requests for information, various submittals, and change orders as necessary, as well as having certain core construction management staff on-site.

16. At no point in time did Defendant Gilbane install or erect the traffic control gate involved in Mr. Robertson's motor vehicle accident, which was instead designed and installed by Defendant Abide.

**2. Defendant Northland's Statement of Undisputed Material Facts**

1. Aspen Robertson died in a single-car motor vehicle accident on September 24, 2022.

2. Mr. Robertson was driving a car northbound through the border crossing station located in Massena, New York, toward the Seaway International Bridge, at the time of the accident.

---

[6] The remainder of Defendant Gilbane's asserted fact has been omitted because it is either not supported by the cited evidence or constitutes a legal conclusion rather than a factual assertion. (Dkt. No. 100, at ¶ 14.)

3.    While driving on the Seaway International Bridge, Mr. Robertson struck a traffic control gate.

4.    That traffic control gate was installed as part of an active and ongoing construction project undertaken to enhance security at the border crossing ("2022 Project").

5.    The 2022 Project was awarded to Defendant Abide International on January 5, 2022.

6.    Defendant Abide's contract with respect to the 2022 Project included the construction of security gates, one of which was the gate that Mr. Robertson struck on September 24, 2022, which was installed by Defendant Abide in or around 2022.

7.    GSA had discretion in picking various contractual structures that provide different levels of supervision and control over contractors as to the performance of the contracted work based on a single contractor being responsible for both the design and construction over the project.

8.    The agreement between GSA and Defendant Abide related to the 2022 Project was a design-build contract, meaning Defendant Abide was responsible to designing and installing the gate, either on its own or through a sub-contractor.

9.    During the course of the 2022 Project, Defendant Abide exercised control over the means and methods of its work on the project during the time of construction along with its subcontractor, Atlas Fence.

10.    The gates were installed per specifications provided to Defendant Abide by CBP and/or GSA pursuant to the 2018 CBP Land Port of Entry Design Standards and Unified Facilities Criteria.

11.     Defendant Northland was one of the contractors involved in a prior capital improvement project at the Port of Entry in 2007 (the "2007 Project").

12.     Defendant Northland entered into a contract with GSA relative to the 2007 Project on or about June 2007.

13.     Defendant Northland was the general contractor for the 2007 Project.

14.     As the general contractor, Defendant Northland's role was to ensure that all contractors built the improvements in accordance with the design documents Defendant Northland was provided.

15.     Defendant Northland did not exercise any control, supervision, or direction over the design of the improvement to be made as part of the 2007 Project.

16.     All work on the 2007 Project was completed in or around November 2011.

17.     Defendant Northland's final application and certification of payment for the work it performed on the 2007 Project was submitted to GSA on or about November 17, 2011, and was approved.

18.     Following the submission of its final application and certification for payment, Defendant Northland never returned to the premises to perform any additional work.

19.     Defendant Northland was never notified of any defects with respect to any of the work it performed relative to the 2007 Project after the completion of that project.

20.     Defendant Northland's scope of work for the 2007 Project did not include the design or installation of the traffic control gate involved in Mr. Robertson's accident.

21.     Defendant Northland was not involved in any way in the subsequent 2022 Project.

26

22.     Defendant Northland has never had any ongoing obligations with respect to the operation, maintenance or control of the premises and/or any buildings, equipment or mechanisms thereon, including, but not limited to, any traffic control gates located at or near the Port of Entry.

23.     Defendant Northland has never had an ownership interest in the premises and/or any of the building, equipment or mechanisms thereon, including, but not limited to, any traffic control gates located at or near the Port of Entry.

24.     Defendant Northland has never entered into any subsequent agreements relative to the Port of Entry nor performed any additional work at the Port of Entry following completion of its work on the 2007 Project in 2011.

## II.     GOVERNING LEGAL STANDARD

### A.     Legal Standards Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and

must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . .  But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d

550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the

evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

**B.    Legal Standards Governing a Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204,

211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F.

Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at

212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak*, 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

30

pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[7]

---

[7]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

III.     **ANALYSIS**

    A.     **Whether Defendant United States Has Waived Its Sovereign Immunity**

After careful consideration, the Court answers the above-stated question in the negative

for the reasons stated in Defendant United States' memoranda of law.  *See, supra,* Parts I.B.1.a

and c of this Decision and Order.  To those reasons, the Court adds the following analysis (which

is intended to supplement, and not supplant, Defendant United States' reasons).

Defendant United States has argued that the FTCA does not constitute a waiver of its

sovereign immunity in this case for two alternative reasons: (1) the relevant work was performed

by the Abide Defendants, who were an independent contractor rather than an employee of the

United States, and thus Defendant United States cannot be sued under the FTCA for their

negligent conduct; and (2) any decisions Defendant United States made related to the

construction and placement of the gate, along with other relevant considerations, were

discretionary matters, and therefore the discretionary function exception applies and Defendant

United States cannot be held liable.  The Court notes that a finding that Defendant United States

meets either of these conditions is sufficient to merit a finding that Plaintiffs' claims are barred

against them on the basis of sovereign immunity.

"The FTCA excludes the acts of 'any contractor with the United States' from the

government's waiver of sovereign immunity."  *Crawford v. United States*, 14-CV-1336, 2016

WL 7190567, at *4 (N.D.N.Y. Dec. 12, 2016) (Kahn, J.) (quoting 28 U.S.C. §2671; citing

*United States v. Orleans*, 425 U.S. 807, 813-14 [1976]; *Roditis v. United States*, 122 F.3d 108,

---

defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

111-12 [2d Cir. 1997]; *B&A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 [2d Cir. 1994]). "'Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States.'" *Ross v. United State*,15-CV-1094, 2016 WL 5415771, at *2 (N.D.N.Y. Sept. 28, 2016) (D'Agostino, J.) (quoting *Moreno v. United States*, 965 F. Supp. 521, 524 [S.D.N.Y. 1997]); *see also Haskin v. United States*, 569 F. App'x 12, 15 (2d Cir. 2014) (noting that the FTCA is to be construed strictly in favor of the government) (quoting *Liranzo v. United States*, 690 F.3d 78, 84 [2d Cir. 2012]). Moreover, the existence of state-law non-delegable duties cannot override this sovereign immunity where the injuries were caused by an independent contractor. *Roditis*, 122 F.3d at 111-12.

"Whether a person is a government employee or an independent contractor is a question of federal law." *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990) (citing *Logue v. United States*, 412 U.S. 521, 528 [1973]). "Under federal law, a person is a contractor and not an employee of the government if the government 'lack[s] the authority to control the detailed physical performance of the contract' . . . , and courts should look to traditional 'principles of agency' when determining whether a person is an independent contractor or employee for FTCA purposes." *Crawford*, 2016 WL 7190567, at *4 (quoting *Leone*, 910 F.2d at 49). "Under this strict control test, 'the crucial factor in distinguishing a federal agency from an independent contractor is the United States' authority to control and supervise, on a day-to-day basis, the detailed physical performance of the contractor.'" *Crawford,* 2016 WL 7190567, at *4 (quoting *Moody v. United States*, 753 F. Supp. 1042, 1046 [N.D.N.Y. 1990] [Munson, J.]). In evaluating the factors related to control, "the Court must focus on the terms of the Contract." *Johnson v.*

*United States*, 11-CV-1035, 2012 WL 2921542, at *3 (N.D.N.Y. July 17, 2012) (Kahn, J.) (citing

*Moreno*, 965 F. Supp. at 524).

Here, Defendant United States and Plaintiffs disagree about whether Defendant United

States exercised the requisite degree of control over the Abide Defendants' work.  When the

Court is answering that question, the most relevant source of information is the contract between

Defendant United States and Defendant Abide pertaining to the 2022 Project.  Here, Defendant

United States has provided a copy of the Statement of Work for Design-Build Services

("Statement of Work") related to the project that was prepared by GSA in which the terms of the

project are outlined.  (Dkt. No. 77, Attach. 4.)  The Court may properly consider this Statement

of Work because it is both integral to Plaintiffs' Complaint and evidence relevant to the question

of whether the Court has subject-matter jurisdiction over Plaintiffs' claims.[8]  *See Mitura v. New*

---

[8]      Plaintiffs appear to acknowledge that the Statement of Work outlines the terms governing
the relevant project. (Dkt. No. 105, at 10-12.)  However, in an attempt to justify why further
discovery is warranted, Plaintiffs raise questions regarding whether the Statement of Work was
actually what was eventually incorporated into the final contract. (*Id.* at 22.)  Plaintiffs provide
no support for this speculation, and in fact acknowledge that a statement of work being
incorporated into a final contract is "common practice." (*Id.*)  Because government conduct is
generally entitled to a presumption of regularity, Plaintiffs' wholly speculative suggestion that
the Statement of Work might not have been incorporated into the final contract here is
insufficient to raise a genuine dispute regarding whether the Statement of Work documents the
agreement between Defendant United States and Defendant Abide. *See U.S. Postal Serv. v.
Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the
actions of Government agencies.").  Plaintiffs also provide a screenshot related to what appear to
be supplements to the contract for the 2022 Project from a website that they claim to be
"Usaspending.com" (which does not exist), and argue that there is no way to determine whether
these supplements expand upon or change the level of control Defendant United States may have
exercised over the 2022 Project.  The Court did manage to locate the source at
https://www.usaspending.gov/award/CONT_AWD_47PA0322F0007_4740_47PH0120D0001_4
740 (last visited September 4, 2025).  Through expanding the Transaction Description box of the
chart (which Plaintiffs have notably not done in their screenshot), the description for the
Supplement dated July 13, 2022, is noted to read, "DHS/CBP installation of security gates and
other security measures at the Massena LPOE, NY.  Instant action is to extend the POP by 79

*York*, 22-CV-1272, 2023 WL 5452740, at *2 (N.D.N.Y. Aug. 24, 2023) (D'Agostino, J.) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings.") (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 [2d Cir. 2008]); *accord Stevens v. City of Oneonta*, 21-CV-1258, 2022 WL 16635301, at *3 (N.D.N.Y. Nov. 1, 2022) (D'Agostino, J.); *Cayuga Nation By and Through Cayuga Nation Council v. Parker*, 605 F. Supp. 3d 414, 421 (N.D.N.Y. 2022) (Sannes, J.).

Plaintiffs assert that the Statement of Work substantiates a finding that Defendant United States had authority to control and supervise, on a day-to-day basis, the detailed physical performance of the Abide Defendants in the following ways: (a) Defendant United States "retained authority to approve and reject key aspects of the contractor's work"; (b) Defendant United States "conducted frequent, detailed field inspections that dictated the means and methods of construction"; (c) Defendant United States "attended weekly progress meetings"; (d) Defendant United States "required adherence to Government-drafted documents"; and (e) Defendant United States "had personnel on-site who supervised Abide's work." (Dkt. No. 105,

---

calendar days at no additional cost of the government." Similarly, the description for the Supplement dated October 6, 2022, is noted to read, "DB services for security gates at the Massena land port of entry in New York. Instant action is to fund the emergency gate repair that was damaged and to extend the period of performance at no additional cost to the government." These descriptions therefore make clear what those supplements do, and whether or not Plaintiffs have access to any such documents themselves; and nothing in the descriptions would support their speculation that they in any way alter the level of control or supervision that Defendant United States had over Defendant Abide with regard to the 2022 Project. Rather, they primarily extend the dates for the period of performance and authorize repairs on the gate for damage presumably caused by the events underlying this action. Plaintiffs have therefore not provided any persuasive reason for this Court to find that the Statement of Work presented is not a sufficient basis for assessing the relevant terms of the design-build contract as it relates to the issue of sovereign immunity.

at 10-11.)  However, many of these statements represent a mischaracterization of the Statement of Work.

Most notably, although the Statement of Work does indicate that the GSA Project Manager would conduct field inspections in conjunction with weekly videoconference progress meetings, and that Defendant Abide's work would be subject to inspections in accordance with an inspection schedule, there is nothing in the Statement of Work that indicates that any of those inspections "dictated the means and methods of construction" as Plaintiffs assert.[9]  To the contrary, the Statement of Work clearly states that "the means and methods used to achieve the requirements [outlined in the Statement of Work] are the contractor's sole choice and responsibility as long as the requirements are met."  (Dkt. No. 77, Attach. 4, at 6.)  Similarly, the Statement of Work does not state that Defendant United States would have on-site personnel supervising Defendant Abide's performance of the work, but rather that (a) contractor personnel must comply with building security and facility access requirements, (b) building Operations and Maintenance Staff are required to be present for the shutdown and restoration in the event of a building system shutdown, and (c) contractor personnel shall be escorted "███████████ ███████████████████████████████."[10]  (Dkt. No. 77, Attach. 4, at 17-18.)

_____

[9]    Nor does the right to conduct inspections mean that Defendant United States exercised strict control.  *Roditis*, 122 F.3d at 111 (noting that the government's retention of a right to inspect the progress of construction does not convert a contractor into a federal employee).

[10]    There have been no factual allegations or admissible evidence presented establishing that such escorts were present for the purposes of supervising the performance of Defendant Abide's work as opposed to for security assurance reasons as required by ███████ and subsequent GSA policies related to facility access for contractors.

None of these specifications translate to Defendant United States supervising Defendant Abide's performance of the relevant construction work.

Moreover, the fact that Defendant United States retained the right to review and approve shop drawings and designs before the start of construction (for the purpose of ensuring they complied the requirements outlined in the Statement of Work), or to approve or reject changes in Defendant Abide's listed personnel, do not translate into control or supervision over Defendant Abide's day-to-day physical performance of the contracted work. Nor does the fact that representatives of GSA would attend various meetings conducted by the contractor mean Defendant United States was either supervising or exercising the control over Defendant Abide's work process. And, as has been stated by the Second Circuit, the fact that Defendant Abide was required to adhere to "Government-drafted documents" or rules and regulations does not suffice to establish strict control. *See Leone*, 910 F.2d at 50 (finding that the fact that the contractors' work was governed by detailed regulations and evaluations was not a sufficient basis to satisfy the strict control test, noting that "[t]he question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government").

Contrary to Plaintiffs' arguments, the Statement of Work clearly indicates that Defendant Abide had wide latitude in how it performed the contracted work as long as it ultimately met Defendant United States' requirements. The Statement of Work indicates not only that Defendant Abide had the sole choice over what means and methods to use as to completing the work, but also that it could, subject to GSA approval, propose variations from the scope of the work as long as they were within the budget, met the objectives for the project, and resulted in an

improved design.  (Dkt. No. 77, Attach. 4, at 6.)  Defendant Abide also bore the ultimate

responsibility for nearly every aspect of the day-to-day performance of the work, including

providing all labor, materials, equipment, tools, supervision, consultants, testing and

commissioning, developing the designs and drawings for the work, obtaining all applicable

permits and licenses and complying with building codes and other federal, state, or local

requirements, developing, providing and maintaining quality control and security plans, and

creating various manuals regarding the work performed.  (Dkt. No. 77, Attach. 4, at 6-19.)  There

is nothing in the Statement of the Work to suggest that Defendant United States supervised or

directed how Defendant Abide performed any of this work on a day-to-day basis.

  The declarations submitted by Defendant United States in support of its motion further

reinforce a finding that Defendant United States did not exercise strict control over Defendant

Abide.  GSA Contracting Officer Lindsey Campbell (who was responsible for the relevant

contract) notably states that the inspections permitted by the contract "were limited to assuring

progress" and "did not dictate the means and method of work to be performed."  (Dkt. No. 77,

Attach. 6, at 3.)  Port Director Robert Dwyer attested that CBP "did not exercise control over

Abide International Inc. or the means and methods of its work," and "neither supervised nor

controlled the construction of the gates by Abide International Inc."  (Dkt. No. 77, Attach. 8, at

3-4.)  For all of the above reasons, the Court finds that Defendant Abide was an independent

contractor related to the relevant project, and thus the FTCA does not constitute a waiver of

Defendant United States' sovereign immunity for the claims asserted.

  Additionally, the Court finds that, in the alternative, Defendant United States' actions in

this case meet the requirements for the discretionary function exception to FTCA liability.  There

are two considerations when assessing whether the government has engaged in a discretionary function. "First, the act must 'involve an element of judgment or choice,'" rather than being mandated by a federal statute, regulation, or policy where "'the employee has no rightful option but to adhere to the directive.'" *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 195 (quoting *Coulthurst v. United States*, 214 F.3d 106, 109 [2d Cir. 2000]; *Berkovitz v. United States*, 486 U.S. 531, 536 [1998]). "Second, the judgment must be grounded in considerations of public policy." *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 195 (citing *Coulthurst*, 214 F.3d at 109).

Here, Defendant United States made a variety of relevant discretionary decisions, including regarding placement, type, and orientation of the traffic control gate, as well as the decision to keep the relevant lane of traffic open and operational during the construction of that gate. As to whether those decisions involved an element of judgment or choice, Plaintiffs argue that the fact that the Department of Transportation published a manual purporting to attempt to establish national criteria for the use of traffic control devices shows that Defendant United States' choices regarding the aspects of the gate's design are not discretionary, but offers no authority that would suggest that such manual has the force of a government regulation that GSA would have had "no rightful option but to adhere" to its contents. (Dkt. No. 101, at 13-14.) Indeed, the Statement of Work notably does not include that manual in its list of standards and criteria documents to which the designs must adhere, choosing instead to follow the guidance in the 2018 Land Ports of Entry Design Standards, which represents guidance specific to U.S. Customs and Border Patrol. (Dkt. No. 77, Attach. 4, at 9.) But again, there is nothing to suggest that even those CBP standards have the binding force of law such that GSA could not have

40

chosen to deviate from them had circumstances warranted it. Rather, it appears GSA made the choice to implement those standards for this specific project, and thus its action in setting standards related to the design of the traffic control gate involved an element of judgment or choice. Moreover, those choices involve elements of public policy related to the unique considerations of border security and the goals sought to be achieved by building the traffic control gate. As a result, the Court finds that Defendant United States acted pursuant to its discretionary function.

For these reasons the Court finds that Plaintiffs' claims against Defendant United States (and any cross-claims asserted against Defendant United States by the other defendants) must be dismissed without prejudice for lack of subject-matter jurisdiction based on both the fact that the Abide Defendants were an independent contractor and alternatively the discretionary function exception to FTCA liability.[11]

### B.  Whether the Court Should Grant Defendant Gilbane's and Defendant Northland's Motions for Summary Judgment

---

[11]    The Court notes that the dismissal of Plaintiffs' claims against Defendant United States does not appear to deprive the Court of subject-matter jurisdiction over Plaintiffs' claims as to the other Defendants because, although jurisdiction in the Complaint is explicitly premised on the fact the United States was a Defendant, the facts alleged in the Complaint (and acknowledgments made in the parties' motion papers) lead to a presumption that diversity of citizenship also exists (in that Defendant Gilbane is alleged to be a Rhode Island corporation with principle place of business in that state, the Abide Defendants variously are either citizens of Washington or California, and all the other Defendants are citizens of New York, while Plaintiff Sheryl Thompson is listed on the Police Accident Report as having an address in Akwesasne, Ontario, Canada, and a paper submitted by Plaintiffs appointing the administrators of Mr. Robertson's estate indicate that both Sheryl Thompson and Frank Robertson are located in the province of Ontario, Canada, as well as that the estate itself appears to be located in Canada), and there is sufficient reason to believe that the amount in controversy exceeds the jurisdictional threshold. *See* 28 U.S.C. § 1332(a)(2) (establishing original jurisdiction in suits between citizens of a State and citizens of a foreign state, provided the citizens of the foreign state are not lawfully admitted for permanent residence in the United States and domiciled in the same state).

After careful consideration, the Court answers the above-stated question in the affirmative for the reasons stated in Defendant Gilbane's and Defendant Northland's memoranda of law.  *See, supra,* Parts I.C.1.a and c, and I.C.2.a and c of this Decision and Order.  To those reasons, the Court adds the following analysis (which again is intended to supplement, and not supplant, the parties' reasons).

Although the two summary judgment motions in this case rely on somewhat different sets of facts based on the specific situations of the two individual defendants who have filed them, the Court will consider them both in the same analysis because both Defendants and Plaintiffs raise essentially identical arguments related to both motions.  Specifically, both Defendant Gilbane and Defendant Northland argue that they are entitled to summary judgment for the following reasons: (a) neither of them worked on the 2022 construction of the traffic control gate (or any aspect of the project of which that gate was a part) that Plaintiffs allege was the cause of Mr. Robertson's death, and in fact neither of them have done any work at the Port of Entry at all since 2009 (as to Defendant Gilbane) and 2011 (as to Defendant Northland); and (b) Plaintiffs have not adduced, and cannot adduce, any admissible evidence that would establish that either Defendant was involved with anything related to the traffic control gate, and evidence already presented establishes that it was Defendant Abide who was responsible for the design and construction of that gate.  (Dkt. No. 97, Attach. 1; Dkt. No. 119, Attach. 2.)

As discussed previously, Plaintiffs failed to present a proper response to Defendants' Statements of Material Facts, which has resulted in this Court adopting those asserted facts to the extent they are consistent with the evidence cited by Defendants in support of those asserted facts. Plaintiffs appear to attempt to excuse their failure to appropriately respond to the

Statements of Material Facts by arguing primarily that the Defendants' efforts to move for

summary judgment are premature because Plaintiffs have not yet had a fair opportunity to

engage in meaningful discovery on the issue of whether Defendant Gilbane or Defendant

Northland in any way contributed to the conditions that resulted in Mr. Robertson's death.

However, in order to make a showing that the Court should defer considering a motion for

summary judgment to permit additional discovery related to essential facts, a party seeking such

remedy must "show[] by affidavit or declaration that, for specified reasons, it cannot present

facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Here, Plaintiffs have not provided

any such affidavit, much less any explanation why such facts are unavailable to it other than the

early stage of discovery in this case.  While an inability to yet conduct sufficient discovery may,

in some cases, be a sufficient justification for delaying consideration on a motion for summary

judgment, it is not a sufficient justification in this case because Plaintiffs have offered no reason

to believe that discovery will produce any evidence that will permit Plaintiffs to counter the

motions submitted by Defendant Gilbane and Defendant Northland.

Indeed, Plaintiffs have admitted in their counter-statement of material facts related to

Defendant Northland's motion that the 2022 Project was unrelated to the earlier work performed

by Defendant Gilbane and Defendant Northland.  (Dkt. No. 120, at 3 ¶ 10 [acknowledging that

"[t]he gate that caused Decedent's death was installed in connection with a separate project"

from that in which Defendant Northland participated in 2007, and that Plaintiffs have no

knowledge as to whether the 2022 Project relied on or altered existing infrastructure installed

during the 2007 Project].)  Because Plaintiffs have essentially admitted that Defendant Gilbane

and Defendant Northland were not involved with the design or construction of the traffic control

43

gate involved in Mr. Robertson's accident (a fact which is indisputable in light of the evidence submitted particularly as part of the motions of Defendant United States and the Abide Defendants) and have offered no reason beyond speculation to believe that the work those Defendants performed at the Port of Entry as part of an unrelated prior construction project somehow contributed to Mr. Robertson's death, they have not sufficiently shown that further discovery is warranted here.

In the absence of any showing that further discovery would be likely to reveal anything of relevance related to the involvement of Defendant Gilbane and Defendant Northland, Plaintiffs' pleas regarding their need to depose those Defendants' affiants and analyze project files, internal communications, or government correspondence are little more than a request to be permitted to engage in a fishing expedition on the vague, speculative hope that they will find something useful. But that is not how our system of litigation works. *See Seneca Beverage Corp. v. Healthnow New York, Inc.*, 200 F. App'x 25, 27 (2d Cir. 2006) ("'Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered'—that is, a mere fishing expedition.") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 [2d Cir. 2001]); *Florence v. New York State Dept. of Environ. Conserv.*, 20-CV-0106, 2024 WL 1116286, at *5 (N.D.N.Y. Mar. 14, 2024) (Hummel, M.J.) (noting that "the party seeking discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition"). Because nothing in Plaintiffs' submissions would lead this Court to believe that further discovery related to Defendant Gilbane and Defendant Northland would produce any evidence substantiating involvement by those Defendants in the circumstances of

Mr. Robertson's death, the Court finds no reason to defer consideration of these motions or to order discovery.

Plaintiffs also argue that the traffic control gate "is not the sole focus of Plaintiffs' theory of liability," but rather that they are "actively investigating additional contributing factors, including the roadway design, curvature of the road, visibility conditions, placement and orientation of traffic control devices, lane configuration, and how traffic was intended to be routed through the Port of Entry." (Dkt. No. 120, at 13.) Yet none of these theories of liability are alleged in Plaintiffs' Complaint. (*See generally* Dkt. No. 1.) The only factors Plaintiffs allege as contributing to the cause of Mr. Robertson's death in the Complaint are the traffic control gate and "the land upon which [it] was situated." (Dkt. No. 1, at ¶ 32.) This vague reference to "the land upon which the traffic control gate was situated" simply does not provide fair notice of all these new theories Plaintiffs now state they are pursuing. Thus, apart from being entirely speculative given that Plaintiffs have offered no evidence (or indeed even factual allegations) as to how these additional factors may have actually contributed to Mr. Robertson's accident,[12] these theories of liability are not properly pleaded in the Complaint and thus not part of the scope of Plaintiffs' claims.

Generally, should a plaintiff wish to pursue additional theories of liability against any defendant, the plaintiff may amend his or her complaint in accordance with Fed. R. Civ. P. 15(a). However, here, Plaintiffs' failure to conduct an investigation into the nature of how the roadways and other various physical aspects of the Port of Entry are configured prior to filing their

---

[12]     The only support Plaintiffs suggest for these theories is "[p]reliminary discussions with an expert liability witness," but they do not provide any evidence related to the content of those discussions, such as a report from that expert witness. (Dkt. No. 114, at 11-12 n.2.)

Complaint (all of which aspects would appear to be reasonably observable or available to Plaintiffs without the need for discovery from any Defendant) – coupled with Plaintiffs' belated recognition of those aspects as only *potential* theories of liability – permits the Court to render a decision on the pending motions for summary judgment (i.e., without denying that motion without prejudice to renewal upon the filing of an Amended Complaint).  Simply stated, Plaintiffs are subject to the consequences of their own choices about how to proceed throughout the course of this litigation.

The undisputed facts as noted above in Parts I.E.1 and 2 of this Decision and Order indicate that neither Defendant Gilbane nor Defendant Northland had any involvement in the design or construction of the relevant traffic control gate or any control over the 2022 Project or the Massena Port of Entry.   Because there is no evidence from which a reasonable factfinder could conclude that Defendant Gilbane and Defendant Northland were involved in the circumstances underlying Mr. Robertson's death, summary judgment is appropriate as to both Defendants.

Additionally, the Court denies Plaintiffs' alternative proposal that this Court dismiss the claims against Defendant Gilbane and Defendant Northland without prejudice, subject to a waiver of their statute-of-limitations defenses.  It is not the place of this Court to order Defendant Gilbane and Defendant Northland (or, indeed, any of the other Defendants in this action) to give up their right to assert a valid statute of limitations defense. *See Cross Westchester Develop. Corp. v. Chiulli*, 887 F.2d 431, 432 (2d Cir. 1989) ("No authority exists, however, to grant dismissals under Rule 41(a)(2) and to order a defendant opposing such dismissal to limit its defenses in subsequent actions.").  Notably, Plaintiffs proposed such a dismissal without

prejudice subject to a waiver of the statute of limitations defense, which was rejected, a fact which suggests the relevant Defendants have no desire to waive such defense. Plaintiffs cannot use this Court to circumvent Defendants' refusal to agree to the terms Plaintiffs have proposed, especially given that what Plaintiffs suggest would cause Defendants undue prejudice in the absence of their consent to any such waiver of their rights.

For all of the above reasons, the Court grants the motions for summary judgment filed by Defendant Gilbane and Defendant Northland, and dismisses those Defendants from this action.

### C.    Whether Plaintiffs Have Alleged Facts Plausibly Suggesting Their Claims Against Defendants SMH and Rifenburg

After careful consideration, the Court answers the above-stated question in the affirmative; however, the Court finds that, in light of the admissible record evidence that has been presented by Defendant SMH, Defendant Rifenburg, and as a consequence of other motions filed by the other Defendants, those motions should be converted to ones for summary judgment, and Plaintiffs shall be permitted an opportunity to respond with any evidence they might have to show why summary judgment should not be granted on the claims against Defendant SMH and Defendant Rifenburg.

As with the above motions for summary judgment, the Court will generally consider the motions to dismiss filed by Defendant SMH and Defendant Rifenburg together because they have both made a primary argument in common: that Plaintiffs' Complaint does not meet the requirements of Fed. R. Civ. P. 8 because it uses group pleading that fails to indicate how

Defendant SMH and Defendant Rifenburg specifically are alleged to be liable for Mr.

Robertson's accident.[13]  (Dkt. No. 31, Attach. 5, at 12-14; Dkt. No. 122, Attach. 3, at 8-10.)

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading that states a claim

for relief must contain "a short and plain statement of the grounds for the court's jurisdiction," as

well as "of the claim showing that the pleader is entitled to relief," and a "demand for the relief

sought."  Fed. R. Civ. P. 8(a).  "Courts have found that a complaint that 'relies on group pleading

and fails to differentiate as to which defendant was involved in the unlawful conduct is

insufficient to state a claim.'"  *McArdle-Bracelin v. Congress Hotel, LLC*, 20-CV-0861, 2022

WL 486805, at *6 (N.D.N.Y. Feb. 17, 2022) (McAvoy, J.) (quoting *Stewart v. Hudson Hall LLC*,

20-CV-0885, 2020 WL 8732875, at *7 [S.D.N.Y. Oct. 19, 2020]).  "The purpose of this standard

is to 'give each defendant fair notice of what the plaintiff's claim is and the ground upon which it

rests,'" and "[a] complaint fails this standard when the pleading 'lumps all the defendants

together in each claim and provides no factual basis to distinguish their conduct.'"  *McArdle-

Bracelin*, 2022 WL 486805, at *6 (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 [2d

Cir. 2001]) (internal alterations omitted).  "Dismissal pursuant to [Rule 8] 'is usually reserved for

those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible

that its true substance, if any, is well disguised.'"  *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir.

2004) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 [2d Cir. 1988]).

---

[13]     The Court notes that Plaintiffs have made identical arguments in opposition to these
motions as they made in opposition to the motions for summary judgment filed by Defendant
Gilbane and Defendant Northland, namely that the Court could alternatively dismiss the claims
against Defendant SMH or Defendant Rifenburg without prejudice subject to the waiver of their
statute of limitations defenses.  The Court rejects these arguments for the same reasons discussed
previously.

While it is true that Plaintiffs levy all accusations of wrongful conduct collectively against "Defendants" as a group here, this is not a case in which the lumping together of the Defendants leave them with no notice of the allegations Plaintiff is levying against them. Specifically, Plaintiffs allege that "Defendants designed, installed, operated, controlled, maintained, supervised, located, repaired, and/or otherwise kept the traffic control gate," and that "Defendants" engaged in a host of specific negligent, careless, or reckless actions, including creating a hazardous condition, failing to warn of that condition, failing to properly inspect the gate, and negligently hiring, supervising and retaining employees related to various actions related to the gate.  (*See generally* Dkt. No. 1.)  Although Defendant SMH and Defendant Rifenburg may disagree with Plaintiffs' assertion that they were responsible for the design, installation, operation, control, maintenance, supervision, location, repair, or keeping of the traffic control gate, Plaintiffs' allegations and claims are not themselves confused, ambiguous, vague, or unintelligible.  Indeed, the fact that Defendant SMH and Defendant Rifenburg (as well as Defendant Gilbane and Defendant Northland) have been able to respond to Plaintiffs' claims and allegations by arguing that they were not involved in any of the alleged activities related to the traffic control gate shows that the substance and scope of Plaintiffs' allegations against them are sufficiently understandable to place Defendants on notice of what claims are being asserted against them, even if they believe that those allegations are inaccurate or baseless.  As a result, this is not one of those cases where the Complaint fails to meet the Rule 8 standard merely because of the use of group pleading.

Moreover, based on the factual allegations *in the Complaint*, Plaintiffs' claims appear at least plausible. *See McArdle-Bracelin*, 2022 WL 486805, at *7 (noting that "asserting claims

49

against a group of defendants is appropriate if those defendants allegedly acted in concert to violated a Plaintiff's rights," and that "[a] complaint that pleads enough facts to make claims of such wrongdoing plausible need not then describe each defendant's particular role in detail in order to avoid dismissal on 'group pleading grounds'"). Furthermore, the motions filed by Defendants SMH and Defendant Rifenburg are, after all, motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which are governed not only by the plausibility standard but by accompanying restrictions regarding what evidence the Court may consider in deciding such motions. As indicated above in Part II of this Decision and Order, when assessing a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must not only accept the allegations in the complaint as true, but also is limited to consideration of the following external evidence: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. *L-7 Designs, Inc.*, 2011 WL 2135734, at *1.

The Court declines Defendant Rifenburg's suggestion that the Court should look beyond the "four corners of the complaint" and consider evidence that has been submitted by itself and others related to whether it had any involvement in the 2022 Project regardless of whether that evidence falls into any of the categories identified above.[14] (Dkt. No. 122, Attach. 3, at 9-10.) While it is true that a certain amount of evidence has been submitted to the Court by this point

---

[14]    Defendant SMH, though it does not explicitly argue that the Court should consider evidence outside the four corners of the Complaint, has also submitted evidence regarding the work it performed at the Port of Entry along with its motion that provide evidence which would tend to support a finding that it had no involvement in the design or construction of the relevant traffic control gate in 2022. (Dkt. No. 31.)

that might tend to undermine Plaintiffs' allegations related to any involvement by Defendant SMH or Defendant Rifenburg in the design or construction of the traffic control gate, that fact does not automatically mean that the Court is empowered to consider such evidence to resolve a motion brought pursuant to Fed. R. Civ. P. 12(b)(6). If Defendant Rifenburg wanted to guarantee that the Court would consider such evidence when assessing its motion, it could have filed a motion for summary judgment along with Defendant Gilbane and Defendant Northland. But it did not, and the Court is restricted by Defendant Rifenburg's choices.

The Court does, of course, have the option of converting the motions to dismiss presented here by Defendant Rifenburg and Defendant SMH to motions for summary judgment, an action which would permit the Court to consider matters outside the pleadings. Fed. R. Civ. P. 12(d). However, before rendering a decision on any such converted motion, "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." *Id.* Because the evidence that has been presented by all parties at this point does not lead to a reasonable conclusion that either Defendant SMH or Defendant Rifenburg were in any way involved in the design, installation, operation, control, maintenance, supervision, location, repair, or upkeep of the traffic control gate, the Court finds that conversion in this instance serves judicial efficiency, and will therefore order Plaintiffs to show cause within FOURTEEN (14) DAYS from the entry of this Decision and Order as to why the Court should not grant summary judgment to Defendant SMH and Defendant Rifenburg.[15]

---

[15]    The Court acknowledges that Defendant SMH has also argued that Plaintiffs failed to serve a notice of claim as required by N.Y. C.P.L.R. § 214-d and failed to comply with heightened pleading standards outlined in N.Y. C.P.L.R. § 3211(h). (Dkt. No. 31, Attach. 5.) The Court notes that this second argument is meritless because New York heightened pleading requirements do not apply in a federal action, regardless of whether the underlying cause of

For the above reasons, the Court finds that the motions to dismiss submitted by Defendant SMH and Defendant Rifenburg should be converted to motions for summary judgment, and Plaintiffs shall have FOURTEEN (14) DAYS from the entry of this Decision and Order in which to respond with a letter-brief and any evidence to counter the evidence presented in those and other motions related to the claims against Defendant SMH and Defendant Rifenburg as to their involvement in the design and construction of the relevant traffic control gate. Defendants SMH and Defendant Rifenburg shall then have SEVEN (7) DAYS in which to file a reply letter-brief.

### D.     Whether Plaintiffs Have Stated a Claim Against the Abide Defendants

---

action is based in state law. *See Roldan v. Lewis*, 2025 WL 676090, at *19 n.28 (E.D.N.Y. Mar. 3, 2025) ("For the avoidance of doubt, 'New York pleading requirements do not apply in a case in federal court,' regardless of the federal or state nature of the underlying claim.") (quoting *Thorson v. Sons of Norway*, 996 F. Supp. 2d 143, 163-64 [E.D.N.Y. 2014]). Moreover, although the notice-of-claim requirement in N.Y. C.P.L.R. § 214-d would appear to apply and both the Complaint and Plaintiffs' opposition memorandum make clear that they did not comply with that requirement, the Court finds that, in light of the evidence presented and the conversion of Defendant SMH's motion to a motion for summary judgment that is pending a response by Plaintiffs, it will not dismiss the claims against Defendant SMH for a failure to comply with N.Y. C.P.L.R. § 214-d unless Plaintiffs' response to that converted motion would otherwise warrant denial of summary judgment on the merits of the claims against Defendant SMH. This is because, as Plaintiffs argue, a dismissal on the basis of failure to comply with N.Y. C.P.L.R. § 214-d would appear to permit Plaintiffs to refile their claims against Defendant SMH after complying with the notice-of-claim requirement, which would not be in the interest of judicial efficiency where the evidence submitted thus far appears to show no evidentiary basis in support of the claims against Defendant SMH. Moreover, N.Y. C.P.L.R. § 214-d is not jurisdictional, meaning Plaintiffs' failure to comply with that requirement does not strip this Court of jurisdiction to consider the merits of the claims against Defendant SMH *See Kretschmann v. Bd. of Edu. of Corning Painted Post Sch. Dist.*, 294 A.D.2d 39, 41 (N.Y. App. Div. 4th Dept. 2002) (noting that compliance with N.Y. C.P.L.R. § 214-d is not a jurisdictional prerequisite but rather a condition precedent to commencing an action).

After careful consideration, the Court finds that the Abide Defendants' motion to dismiss should be also converted to a motion for summary judgment specifically related to the Abide Defendants' argument that it is shielded from liability by derivative immunity, and Plaintiffs shall be permitted an opportunity to respond with any evidence they might have to show why summary judgment should not be granted on the claims against the Abide Defendants on the basis of derivative immunity.

The Abide Defendants argue that the claims against them must be dismissed for three separate reasons: (1) those claims raise a non-justiciable political question; (2) their actions are covered under the doctrine of derivative sovereign immunity as a consequence of their contractual relationship with Defendant United States; and (3) those claims are barred by the government contractor defense.[16]  (Dkt. No. 57, Attach. 2.)  The Court will discuss these arguments in order.

### 1.    Non-Justiciable Political Question

Where a question presented has been "'entrusted to one of the political branches or involves no judicially enforceable rights,'" such case "is said to present a 'political question' and to be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Rucho v. Common Cause*, 588 U.S. 684, 696 (2019) (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 277 [2004]; citing *Baker v. Carr*, 369 U.S. 186, 217 [1962]).  The Supreme Court has identified six "formulations" which "may describe a political question":

---

[16]     The Abide Defendants also argue, much like Defendant SMH and Defendant Rifenburg, that Plaintiffs have failed to state a claim because of their use of group pleading in the allegations of the Complaint.  (Dkt. No. 57, Attach. 2, at 9-10.)  The Court rejects this argument for the same reasons already discussed related to those other Defendants' motions.

> Prominent on the surface of any case held to involve a political question is found (1) a textually demonstrable constitutional commitment to a coordinate political department; or (2) a lack of judicially discoverable and manageable standards for resolving it; or (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of the government; or (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 321 (2d Cir. 2009), *reversed on other grounds by Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410 (2011) (quoting *Baker*, 369 U.S. at 217).  "Unless one of these formulations is *inextricable* from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence."  *Baker*, 369 U.S. at 217 (emphasis in original).  The Supreme Court has suggested that these formulations are listed in "descending order of both importance and certainty."  *Am. Elec. Power Co.*, 582 F.3d at 321 (quoting *Vieth*, 541 U.S. at 278).

The Court rejects the Abide Defendants' argument that the issues here related to the claims against them, and, in particular, related to the placement and design of the traffic control gate, are nonjusticiable.  The Abide Defendants argue both that this case involves a textually demonstrable constitutional commitment to the other political branches because the traffic control gate is part of a Port of Entry and thus national security and foreign affairs are implicated, and there are no judicially manageable standards for resolving the issues here because, again, it involves foreign policy decisions related to border security.  (Dkt. No. 57, Attach. 2, at 3-6.)  As to the first consideration, the fact that this case involves decisions made that are in part related to considerations of border security or inter-country travel does not

inherently render it a nonjusticiable political question just because the United States Constitution grants to the President authority over foreign affairs and to Congress the power to regulate foreign commerce.  It must be remembered that what is the subject of the relevant claims is whether the Abide Defendants were negligent in their design and construction of a traffic control gate.  That such gate is located at a border Port of Entry and might have been subject to discretionary decisions by the United States Government does not automatically place this case under the category of a political question constitutionally committed to Congress or the Executive.  The political question doctrine is "'designed to restrain the Judiciary from inappropriate interference in the business of the other branches of the Government,' . . . where that other branch is better suited to resolve an issue." *Am. Elec. Power Co.*, 582 F.3d at 321 (quoting *United States v. Munoz-Flores*, 495 U.S. 385, 394 [1964]).  "[S]imply because an issue may have political implications does not make it non-justiciable." *Am. Elec. Power Co.*, 582 F.3d at 321 (citing *Baker*, 369 U.S. at 211).  The fact that the relevant traffic control gate had the purpose of controlling the flow of persons and goods over an international border does not divest this Court of the ability to assess whether the design and construction of that gate was negligent. *See Kilnghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991) (finding no political question in a case involving actions taken by the Palestine Liberation Organization because, despite occurring under circumstances of international relations and terrorism, the claims involved were, essentially, ordinary tort claims, and "[t]he fact that the issues before us arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question").

The Abide Defendants also argue that no judicially manageable standards exist for their resolution, but again, mostly rely on an argument that, because the traffic control gate was located at a Port of Entry, foreign policy and national security concerns are implicated and such matters are the province of the Executive and Legislative branches. (Dkt. No. 57, Attach. 2, at 6.) However, resolution of this case will not require the assessment of complex decisions about foreign policy or national security. It does not even involve any question of whether Defendant United States acted negligently in declining to close the relevant traffic lane (which leads northbound into Canada) during the ongoing construction of that gate. It involves the question of whether the specific traffic control gate in the condition and position it was in while completely open off the roadway was negligently designed or constructed. This is simply not the type of question that is either reserved to the political branches or that is beyond the ability of the Court to find manageable standards for its resolution—to the contrary, common law negligence jurisprudence provides well-established standards for assessing the questions raised here, as does the body of law that addresses discretionary decisions by the United States, including as related to independent contractors. *See Am. Elec. Power Co*, 582 F.3d at 329 (finding no political question related to pollution issue because "[w]ell-settled principles of tort and public nuisance law provide appropriate guidance to the district court in assessing" those claims and such courts are competent to deal with those issues); *Klinghoffer*, 937 F.2d at 49 (noting that "because the common law of tort provides clear and well-settled rules on which the district court can easily rely, this case does not require the court to render a decision in the absence of 'judicially discoverable and manageable standards'").

56

For the above reasons, the Court finds that the issues raised in this case do not fall under the category of nonjusticiable political questions, and therefore finds no reason why it would be improper to adjudicate such claims.

### 2.    Derivative Sovereign Immunity

"'Government contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States,'" but "[t]hat immunity, however, unlike the sovereign's is not absolute." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (quoting *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 [1943]).  "This 'derivative sovereign immunity protects a private entity that has contracted with the federal government, provided that the government acted within its constitutional authority and that the government has specifically authorized the contractor's actions at issue.'"[17]  *Yeend v. Akima Global Servs., LLC*, 20-CV-1281, 2025 WL 959202, at *8 (N.D.N.Y. Mar. 31, 2025) (Nardacci, J.) (quoting *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 770 [9th Cir. 2025]).  "Both the Supreme Court and the Second Circuit have noted in recent years that the 'critical factor' in determining the availability of such immunity is whether 'the contractor's performance [was] in compliance with all federal directions; in other words, [whether] the contractor had a defense because its actions were all authorized and directed by the Government of the United States.'"  *Yeend*, 2025 WL 959202, at *8 (quoting *Badilla v. Midwest Air Traffic Control Servs., Inc.*, 8 F.4th 105, 125 n.8

---

[17]    Although this concept is often termed "derivative sovereign immunity," the Court notes that there appears to be an ongoing debate as to whether it is actually sovereign immunity (in which case it would be jurisdictional), or whether it is a different type of immunity that constitutes a defense on the merits.  *See New York by James v. Pennsylvania Higher Educ. Assistance Agency*, 19-CV-9155, 2020 WL 2097640, at *6-7 (S.D.N.Y. May 1, 2020) (discussing a split of authority on this question between various circuits that have addressed it, and concluding that it is a defense on the merits).

[2d Cir. 2021]).   However, where the "agent had 'exceeded his authority' or the authority 'was not validly conferred,' . . . the agent could be held liable for conduct causing injury to another." *Campbell-Ewald Co.*, 577 U.S. at 167 (quoting *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21 [1940]).   Various courts have clarified that this immunity "'is limited to cases in which a contractor had no discretion in the design process and completely followed government specifications.'"  *Childs v. San Diego Family Housing LLC*, 22 F.4th 1092, 1097 (9th Cir. 2022) (quoting *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 [9th Cir. 2015]); *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345-46 (4th Cir. 2014) (finding that "the contractor must adhere to the government's instructions to enjoy derivative sovereign immunity; staying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities 'the acts of the government,'" and noting that "[i]f the military dictated exactly how KBR should undertake its waste management and water treatment tasks, those functions were not discretionary because they did not involve an element of judgment or choice[, but] by contrast, if KBR enjoyed some discretion in how to perform its contractually authorized responsibilities, the discretionary function exception would apply, and KBR could be liable"); *Vangjeli v. Banks*, 19-CV-1635, 2020 WL 5880131, at *5 (E.D. Pa Oct. 2, 2020) (noting that "there is a fundamental difference between derivative sovereign immunity and official immunity that necessarily means that both will not apply in the same case: discretion is necessary to a claim of official immunity but fatal to a claim for derivative sovereign immunity") (collecting cases).  "The 'driving purpose of derivative sovereign immunity is to prevent the contractor from being held liable when the government is actually at fault but is otherwise

immune from liability.'" *New York by James*, 2020 WL 2097640, at *7 (quoting *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 70 [D.C. Cir. 2019]).

As to derivative immunity, Plaintiffs have not alleged facts plausibly suggesting that the manner in which the traffic control gate was designed and/or built in any way exceeded the authority conferred to the Abide Defendants under the Statement of Work.  Nor is there any reason to believe that the Abide Defendants exercised discretion in the design of the traffic control gate in any manner that would be relevant to Plaintiffs' claims.  Plaintiffs argue most notably that one of the critical design flaws that led to Mr. Robertson's death was the fact that the gate was pointed toward oncoming traffic, raising the risk that the gate would act as a "spear" if a vehicle collided with it; but that configuration is notably compliant with the standard outlined in the 2018 Land Ports of Entry Design Requirements, which is specifically listed in the Statement of Work as one of the documents with which all design work and related submissions related to the project were required to comply.  (Dkt. No. 77, Attach. 4, at 9; Dkt. No. 77, Attach. 5 ["███████████████████████████████████████████ ████████████████████."].)

Moreover, although the Statement of Work indicates that the "means and methods" of how to achieve the requirements of the work were the Abide Defendants' choice, the terms of the agreement do not offer the Abide Defendants the ability to exercise any discretion over the requirements themselves, but instead (a) specified the locations and approximate sizes of the gates, (b) specified the standards to which those gates were required to be designed and built, and (c) required shop drawings related to all designs to be submitted to the government as well as that any ongoing modifications of those drawings be submitted for government approval within

three days. (Dkt. No. 77, Attach. 4, at 6-14.) The Abide Defendants had the option to propose design changes to the Scope of Work, but all proposed changes were required to be approved by GSA. (*Id.* at 6.) This might in the abstract suggest a potential for the exercise of discretion, but there has been no indication in this case that the Abide Defendants in fact did propose any such changes to the Scope of Work, much less that the ultimate design of the traffic control gate specifically at issue here was in any way based on any changes they proposed. Nor is there any suggestion that the traffic control gate in any way deviated from the standards outlined by GSA in the Statement of Work in a manner that would bring the Abide Defendants' conduct outside the scope of the authority conferred to it under the agreement.

Further, to the extent that Plaintiffs allege a defect in the fact that the traffic control gate in question was not painted or bearing certain reflective materials or signs at the time of the accident because the gate was still under construction, there can be no doubt that the decision to leave the lane of traffic affected by the gate open during the ongoing construction process was a discretionary decision by Defendant United States over which the Abide Defendants had no control. The Statement of Work specifically states that "[t]he Massena, NY LPOE is open for operations 24/7 and must continue to operate throughout the duration of the construction process," and "[t]he site is to remain fully operational throughout the entirety of the project, with no disruption to tenant operations." (Dkt. No. 77, Attach. 4, at 5, 9.) The Abide Defendants cannot be considered as having failed to follow the Government's specifications merely because they were still actively in the process of constructing the gate at the time the accident occurred where Defendant United States made the discretionary decision that the lane of traffic should remain open during that ongoing construction.

60

Lastly, Plaintiffs' arguments appear to imply that a finding that the Abide Defendants are entitled to derivative immunity based on a lack of discretion over the work they performed would conflict with the finding that they are an independent contractor. However, these questions involve two different considerations. The assessment of whether the Abide Defendants are independent contractors related to the 2022 Project focuses on whether Defendant United States exercised substantial control over the *day-to-day work* of the Abide Defendants. That is not the same question as to whether the Abide Defendants had discretion related to the design of the gates or other relevant considerations, or whether the Abide Defendants followed the directions provided to it by Defendant United States in the Statement of Work. As a result, the Court finds that there is nothing inconsistent in finding both that the Abide Defendants are an independent contractor and are entitled to derivative immunity under Defendant United States' discretionary function exception immunity.

For all of the above reasons, the Court finds that, because the presented evidence shows the Abide Defendants acted within the authority of their contract with Defendant United States and complied with all relevant requirements related to that work without exercising discretion themselves, the Abide Defendants are shielded from Plaintiffs' claims here by derivative immunity. The Court recognizes, however, as discussed above in note 17 of this Decision and Order, there is some debate as to whether derivative immunity is jurisdictional or not, and at least one court in this circuit has presented fairly persuasive arguments as to why it is not. *New York by James*, 2020 WL 2097640, at *6-7. If it is not jurisdictional, then the Court's consideration of certain extrinsic evidence (such as the Statement of Work and related documents submitted by Defendant United States referenced above) would not be proper without converting the Abide

61

Defendants' motion to one for summary judgment and permitting Plaintiffs an opportunity to submit any applicable evidence in opposition. Because the Court would tend to agree with the rational in *New York by James*, it will, out of an abundance of caution, covert the Abide Defendants' motion into one for summary judgment and order Plaintiffs to show cause within FOURTEEN (14) DAYS from the entry of this Decision and Order as to why, on the analysis conducted above, summary judgment should not be granted to the Abide Defendants.[18] The Abide Defendants shall then have SEVEN (7) DAYS in which to file a reply letter-brief.

####    E.    Whether the Court Should Grant Defendant Gilbane's Motion for Sanctions

After careful consideration, the Court answers the above question in the affirmative for the following reasons.

"Federal Rule of Civil Procedure 11 provides that, '[b]y presenting to the court a pleading, written motion, or other paper,' an attorney 'certifies that to the best of [her] knowledge, information, and belief,' formed after a reasonable inquiry, the filing is: (1) 'not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported by available evidence, or evidence likely to be discovered on further investigation." *Kyros Law P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023) (quoting Fed. R. Civ. P. 11[b]). "To establish a Rule 11(b) violation, it must be 'patently clear that a claim has absolutely no chance of success under the existing precedents, and where no

---

[18]    Because the Court finds Plaintiffs' claims would be dismissed under on this basis, absent any contrary evidentiary showing by Plaintiffs, it declines to address the Abide Defendants' alternative arguments regarding the government contractor defense at this time.

reasonable argument can be advanced to extend, modify or reverse the law as it stands.'"
*Gunsalus v. City of Syracuse, New York*, 21-CV-1188, 2025 WL 1201862, at *2 (N.D.N.Y. Apr.
25, 2025) (Brindisi, J.) (quoting *McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 638 F.
Supp. 3d 333, 338 [S.D.N.Y. 2022]).  "Although Rule 11 sanctions can be pursued 'where an
attorney or party declines to withdraw a claim upon an express request by his or her adversary
after learning that [the claim is] groundless,' trial courts 'maintain a high bar for establishing a
Rule 11 violation given judicial concern for encouraging zealous advocacy.'"  *Gunsalus*, 2025
WL 1201862, at *2 (quoting *McKenzie-Morris*, 638 F. Supp. 3d at 338).

Here, there is a distinct difference between Plaintiffs' counsel's action in filing a
Complaint naming Defendant Gilbane as a Defendant and their choice to not agree to a dismissal
of the claims against Defendant Gilbane without the imposition of certain waivers of Defendant
Gilbane's defenses after they had been provided with discovery from Defendant Gilbane and the
other Defendants that would appear to sharply undermine their underlying theory of their claims
against Defendant Gilbane.  In this Court's estimation, there was nothing frivolous about naming
Defendant Gilbane as a Defendant initially, nor is the fact that Plaintiffs' counsel's research was
admittedly not extensive an indication that it was so inadequate as to render their naming of
Defendant Gilbane legally sanctionable.  They had found evidence that Defendant Gilbane was
involved in a construction project related to the Massena Land Port of Entry.  Without any
suggestion that pertinent information about the scope of that work or the terms of their contract
with the United States for the performance of that work was public information at the time
Plaintiffs filed the Complaint, the Court cannot say that they were lacking a good-faith,

reasonable belief that Defendant Gilbane's involvement in the construction of the Land Port of Entry may have contributed to the injury underlying their claims.

That being said, additional information became known to Plaintiffs' counsel throughout the course of litigation.  Defendant Gilbane indicates that Plaintiffs' counsel should have become aware that it had no involvement in the injury underlying their claims through (a) the motion submissions of Defendant United States and the Abide Defendants, which contain detailed information regarding who controlled the Land Port of Entry and who actually designed and constructed the relevant traffic control gate,[19] (b) the affidavit of Sean Cahill, which Defendant Gilbane provided to Plaintiffs on or about November 22, 2024, when it sought to obtain Plaintiffs' agreement to a voluntary discontinuance of the claims against it without prejudice, and (c) the contract with GSA related to its work at the Land Port of Entry from May 2005 that substantiated that it did not perform any design or construction work on that earlier project, but rather acted as the construction manager, in which role it reviewed requests for information, various submittals, and change orders if necessary, and kept a few core staff on site.  (Dkt. No. 115, Attach. 1, at 5-6.)  As discussed above related to Defendant Gilbane's motion for summary judgment, the evidence presented so far related to the various motions does not reveal any involvement of Defendant Gilbane in the design, construction, maintenance, or ownership of the relevant traffic control gate or the land upon which it was situated.  Moreover, evidence submitted with the motions filed by Defendant United States and the Abide Defendants has also shown that it was the Abide Defendants specifically who performed the design and construction

---

[19]    These motions were filed on January 17, 2025, and November, 26, 2024, respectively. (Dkt. No. 57, 77.)

of that traffic control gate.  Again, as already discussed, Plaintiffs have presented no evidence to counter any of this evidence or to even suggest Defendant Gilbane's involvement in the conditions that allegedly resulted in Mr. Robertson's death.  As a result, it should have been clear to Plaintiffs' council that there was no basis in the evidence for keeping Defendant Gilbane in this action.

And, indeed, Plaintiffs' counsel themselves appear to have recognized that fact because they did offer to dismiss the claims against Defendant Gilbane without prejudice subject a waiver of its statute of limitations defenses.  Although there is some disagreement about the details, Plaintiffs' counsel and Defendant Gilbane both admit that there were talks between them regarding a stipulation of dismissal after certain preliminary information had been disclosed.[20] The Court notes that the email cited in Plaintiffs' opposition memorandum of law in which they offered a stipulation of dismissal without prejudice subject to waiver is dated February 19, 2025, which is after both Defendant United States and the Abide Defendants had filed their motions with relevant evidence related to the 2022 Project.  (Dkt. No. 117, at 8.)  Plaintiffs had previously agreed to a stipulation of dismissal of claims without any waiver restriction against certain other parties, which Plaintiffs' counsel explain was because they had received information that the United States owned the land where the Port of Entry is located and thus those Defendants "were indisputably not proper defendants."  (Dkt. No. 117, at 9.)

---

[20]     Notably, Plaintiffs admit that "Gilbane's counsel previously suggested that Plaintiffs could dismiss with prejudice and rejoin Gilbane later under the relation-back doctrine" before they offered the idea of a dismissal without prejudice subject to waiver of any statute of limitations defense, but Defendant Gilbane asserts that its initial offer was, in fact, for a stipulation of dismissal *without* prejudice. (Dkt. No. 117, at 7-8; Dkt. No. 118, at 9.)

Faced with the evidence that was made available by February 2025, it was simply not a reasonable position for Plaintiffs' counsel to maintain the potential of liability against Defendant Gilbane based on a speculative potential that their experts might identify some other factor contributing to Mr. Robertson's death that was related to Defendant Gilbane's work on the prior project for the Massena Land Port of Entry (especially because, as discussed above, such theories of liability are not reasonably found within the Complaint). (Dkt. No. 117, at 9.) Zealous advocacy and protection of client interests is to be applauded, but it does not permit an attorney to continue to pursue claims against a defendant despite all evidence to the contrary in the slim hope that discovery will reveal something that might be used to craft a belated theory of liability. And, contrary to Plaintiffs' counsel's argument, their offering of a conditional stipulation of dismissal without prejudice does not absolve them of responsibility here, because Defendant Gilbane should not be required to waive a valid defense merely to be released from this litigation when Plaintiffs have no evidence to justify continuing their claims against it. It was not Defendant Gilbane's responsibility to accept a conditional dismissal to avoid the alleged harm to itself here; instead, it was Plaintiffs' counsel's obligation to make an honest, ongoing assessment of the viability of its claims in light of the available evidence.

For the above reasons, the Court finds that sanctions are warranted to the extent that Defendant Gilbane was required to file its motion for summary judgment following Plaintiffs' counsel's conditioning of any offer of dismissal on the waiver of statute of limitations defenses. The Court will therefore Order Plaintiffs' counsel to pay Defendant Gilbane's reasonable attorney's fees and costs related specifically to the motion for summary judgment and this motion for sanctions, but not for any work performed prior to that.

**ACCORDINGLY**, it is

**ORDERED** that Defendant United States' motion to dismiss (Dkt. No. 77) is **GRANTED**, such that the claims against it are **DISMISSED** without prejudice for lack of subject-matter jurisdiction; and it is further

**ORDERED** that Defendant Gilbane's and Defendant Northland's motions for summary judgment (Dkt. Nos. 97, 119) are **GRANTED**; and it is further

**ORDERED** that Defendant Gilbane's motion for sanctions (Dkt. No. 115) is **GRANTED** to the extent specified; and it is further

**ORDERED** that the claims against Defendant Gilbane and Defendant Northland are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs shall show cause within **FOURTEEN (14) DAYS** from the entry of this Decision and Order as to why the Court should not grant summary judgment to Defendant SMH, Defendant Rifenburg, and the Abide Defendants on their converted motions, and those Defendants shall have **SEVEN (7) DAYS** thereafter in which to file reply letter-briefs

Dated: September 17, 2025
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge